IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Vitor V. NOGUEIRA-MENDES,<br><br>    Petitioner,<br><br>v.<br><br>Brian MCSHANE, Field Office Director of Enforcement and Removal Operations, Philadelphia Field Office, Immigration and Customs Enforcement; Kristi NOEM, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; Pamela BONDI, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; Jamal L. JAMISON, Warden of Philadelphia Federal Detention Center,<br><br>    Respondents. | CIVIL ACTION<br>NO. 25-5810 |

## OPINION

**Slomsky, J.**                                    December 3, 2025

### I. BACKGROUND

Petitioner Vitor V. Nogueira-Mendes ("Petitioner") is a citizen of Brazil who entered the United States in late 2014. (Doc. No. 8 at 4.) Petitioner was initially detained by Customs Officers but was later released on his own recognizance. (Id.) Sometime after his release, he moved to Philadelphia, where he lived with his wife. (Doc. No. 1 at ¶ 42.) Though the Department of Homeland Security ("DHS") placed Petitioner in removal proceedings, an Immigration Judge dismissed those proceedings in 2020 due to Petitioner's pending U-Visa Application. (Id.) Petitioner's U-Visa Application was denied in 2022. Shortly after his U-Visa was denied, an Application for Asylum (Form I-589) was filed on his behalf, which is still

1

pending.  (Doc. No. 8-1 at 3.)  Petitioner's removal proceedings have not been re-opened. (Doc. No. 8 at 3 n.2.)

On October 6, 2025, upon receiving information on Petitioner's whereabouts, government agents placed him in United States Immigration and Customs Enforcement ("ICE") custody and transported him to ICE's Philadelphia Field Office.  (Doc. No. 8 at 5.)  After Petitioner was processed in Philadelphia, Respondents note that Petitioner was "transferred to the Moshannon Valley Processing Center, where he is currently detained."  (Id.)

On October 8, 2025, Petitioner filed a Petition for Writ of Habeas Corpus (Doc. No. 1), which is now before the Court.  In that Petition, he asks the Court to order his release, or, in the alternative, to be given a bond hearing before an Immigration Judge.  (Id. at 13.)  On November 13, 2025, Respondents filed their Response in Opposition.  (Doc. No. 8.)  On November 17, 2025, Petitioner filed his Reply.  (Doc. No. 10.)  Finally, on November 20, 2025, Petitioner filed a Motion for a Temporary Restraining Order.[1]  (Doc. No. 11).  The Petition is now ripe for disposition.

## II.   JURISDICTION

A federal court has jurisdiction to issue writs of habeas corpus if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  Since Petitioner is in custody and he asserts that his continued detention violates the Immigration and Nationality Act ("INA"), the Court has jurisdiction to consider the Petition under 28 U.S.C. § 2241.  Though Petitioner was moved from Philadelphia to the Moshannon Valley Processing

---

[1]  Because the Court will grant the Petition for Writ of Habeas Corpus (Doc. No. 1), Petitioner's Motion for a Temporary Restraining Order (Doc. No. 11) will be denied as moot.

Center—which is in the Middle District of Pennsylvania—the Court still retains jurisdiction over him.  See Anariba v. Dir. Hudson Cnty. Corr. Ctr., 17 F.4th 434, 445–46 (3d Cir. 2021) (holding that district courts retain jurisdiction over petitioners who were transferred after properly filing their petition); see also Ndiaye v. Jamison, No. 25-6007, 2025 WL 3229307, at *1 n.1 (E.D. Pa. Nov. 19, 2025) (finding jurisdiction in the Eastern District of Pennsylvania to be proper despite the petitioner being transferred to Moshannon Valley).[2]

Nevertheless, Respondents submit three statutory grounds that would divest the Court of jurisdiction: (1) 8 U.S.C. § 1252(g);  (2) 8 U.S.C. § 1252(b)(9);  and (3) 8 U.S.C. § 1252(a)(2)(B)(ii).  (Doc. No. 8 at 6–11.)  The Court will address each of the Respondents' grounds in turn.

First, 8 U.S.C. § 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  In relying on this provision, Respondents overlook its narrow construction by the United States Supreme Court.  Specifically, the Supreme Court limited Section 1252(g) to cover only the three discrete actions named in that provision: commencing proceedings, adjudicating cases, or executing removal orders.  Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S.

---

[2]  When Petitioner filed his Petition, he named as Respondent the Warden of the Federal Detention Center ("FDC") in Philadelphia, Jamal Jamison.  As Petitioner is no longer detained at the FDC in Philadelphia, Jamison is not his immediate custodian.  However, Petitioner named Brian McShane, the Acting Director of the ICE Philadelphia Field Office, as a Respondent too.  McShane "has the authority to effectuate [his] release" despite Petitioner's detention outside of this District.  See Demirel v. Fed. Det. Ctr. Phila., No. 25-5488, 2025 WL 3218243, at *2 (E.D. Pa. Nov. 18, 2025) (finding Brian McShane an appropriate Respondent when the petitioner was transferred outside of the Eastern District of Pennsylvania).

471, 482 (1999). In Petitioner's case, he is not challenging the commencement, adjudication, or execution of his removal proceedings, which even Respondents concede were dismissed in 2020 and never re-opened. (Doc. No. 8 at 2 n.2.) Rather, Petitioner merely challenges the legality of his detention without a bond hearing as required by 8 U.S.C. § 1226(a). As a result, Section 1252(g) does not prevent the Court from hearing Petitioner's case. See Demirel, 2025 WL 3218243, at *5.

Second, 8 U.S.C. § 1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." Regarding this provision, binding authority is clear. The United States Supreme Court held that Section 1252(b)(9) "does not present a jurisdictional bar" when detainees request a hearing on their continued detention. Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018). Here, Petitioner contests Respondents' decision to detain him without a bond hearing—not Respondents' decision to remove him. (Doc. No. 1 at ¶ 7); see also Demirel, 2025 WL 3218243, at *2 (finding the government's denial of a bond hearing to be "independent of" and "collateral to" the removal process contemplated by Section 1225(b)(9)). Further, when a court "cannot meaningfully provide [a petitioner's requested relief] alongside review of a final order of removal," Section 1225(b)(9) does not deprive a court of jurisdiction. E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec., 950 F.3d 177, 186 (3d Cir. 2020). Here, if Petitioner is eventually removed, the Court would be unable to provide his requested relief: release from detention or a bond hearing. Therefore, this provision does not present an obstacle to the Court having jurisdiction over Petitioner's case.

4

Finally, 8 U.S.C. § 1252(a)(2)(B)(ii) does not allow a court to review a removal decision left to the discretion of the Attorney General or the Secretary of Homeland Security. However, Petitioner's challenge is directed to a purely legal question: whether Respondents have authority to detain him under the INA. See Kashranov v. Jamison, No. 25-5555, 2025 WL 3188399, at *4 (E.D. Pa. Nov. 14, 2025). The extent of Respondent's statutory authority to detain him is "not a matter of discretion," so the Court can review those decisions. Zadvydas v. Davis, 533 U.S. 676, 688 (2001).[3]

## III.    ANALYSIS

### A.  Merits

Petitioner's primary argument is that Respondents are detaining him in violation of the INA, specifically 8 U.S.C. § 1226(a).[4] Respondents claim that their authority to detain Petitioner

---

[3]  Respondents also ask the Court to dismiss Petitioner's case because he failed to exhaust his administrative remedies by appealing to the Board of Immigration Appeals ("BIA"). (Doc. No. 8 at 13–15.) Respondents do not cite to any exhaustion requirement within the applicable statutes. Rather, they submit prudential reasons for requiring exhaustion, such as judicial efficiency and agency-specific expertise. (See id.) But this Court is persuaded by the reasoning of other courts in this District which have found unpersuasive Respondent's line of reasoning. See, e.g. Ndiaye, 2025 WL 3229307, at *3–4 (citing the lack of exhaustion requirement in the statute, the purely legal question of the challenge, and the futility of such a challenge given the BIA's recent ruling in favor of Respondents); see also Kashranov, 2025 WL 3188399, at *4 (same); Demirel, 2025 WL 3218243, at *3–4 (same).

[4]  Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General "may release" noncitizens on "bond" or "conditional parole," except if they have committed any criminal offenses listed in Section 1226(c). Id. Respondents do not claim that Petitioner committed any of the offenses listed in Section 1226(c).

Moreover, in Petitioner's Motion for a Temporary Restraining Order (Doc. No. 11), he also alleges violations of the Due Process Clause of the Fifth Amendment. Because his Due Process claims are inextricably intertwined with his statutory claims, the Court focuses its Opinion on the latter claims. See Kashranov, 2025 WL 3188399, at *5 (noting that "if Section 1226 governs, then [petitioner] has due process rights . . . .")

5

stems not from 8 U.S.C. § 1226(a), but instead from 8 U.S.C. §1225(b)(2).[5] That distinction matters because of the disparity in process afforded by each provision. Specifically, Section 1225(b)(2) makes detention mandatory and provides few procedural protections for detainees. On the other hand, Section 1226(a) makes detention only discretionary and provides several procedural protections for detainees. See 8 C.F.R. § 1236.1(d), (c)(8) (providing those detained under Section 1226(a) with individualized custody determinations, bond hearings, and rights of appeal); see also Jennings, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") If Respondents are correct that Section 1225(b)(2) applies to Petitioner, then (1) his continued detention is mandatory, and (2) his request for a bond hearing is futile.

The United States Supreme Court has held that Section 1226(a) "creates a default rule for [aliens already present in the United States]." Jennings, 583 U.S. at 303. By contrast, Section 1225(b)(2) applies to "alien[s] seeking admission" to the United States. Therefore, the core dispute between the parties is whether the term "alien[s] seeking admission" under Section 1225(b)(2) is capacious enough to apply to all aliens applying for admission—which would include Petitioner—or whether only the default rule in Section 1226(a) applies to him.

Earlier this year, the Board of Immigration Appeals ("BIA") found in favor of Respondents' position. See Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) (holding that Section 1225(b)(2) applies to all applicants for admission who are subject to removal proceedings). To date, no federal appellate court has decided this question. But almost every

---

[5] Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding . . . ." 8 U.S.C. § 1225(b)(2)(A).

district court in the country that has ruled on this issue—including five within this District alone—have rejected the BIA's and Respondents' interpretation of Section 1225(b)(2). See, e.g. Demirel, 2025 WL 3218243, (Doc. No. 11-1) (appending 282 cases that rejected Respondents' interpretation); Patel v. McShane, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); Ndiaye, 2025 WL 3229307; Kashranov, 2025 WL 3188399; Cantu-Cortes v. O'Neill, No. 25-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025).  This Court finds the reasoning from these Opinions to be persuasive.  See Kashranov, 2025 WL 3188399, at *6–7 (explaining how the text and structure of Section 1225(b)(2) demonstrate its inapplicability to immigrants who are already present in the country); Ndiaye, 2025 WL 3229307 (finding the canon against surplusage and Congress's recent modifications to Section 1226 prove that Section 1225(b)(2) is inapplicable to those already living in the country).

Petitioner has been living in the United States since 2014, so Section 1225(b)(2) does not apply to him.  Instead, the default rule in Section 1226(a) governs Petitioner's detention.  Because Section 1226(a) provides for a bond hearing and Petitioner has not received one, Petitioner has demonstrated that his continued detention violates his rights under that provision.

**B.  Relief**

Accordingly, for the reasons stated supra, Petitioner is entitled to the procedural protections afforded by Section 1226(a)—namely, a bond hearing before an Immigration Judge. As such, the Court will order Respondents to provide Petitioner with a bond hearing under Section 1226(a) within seven (7) days.  See Cantu-Cortes, 2025 WL 3171639, at *2.  If Respondents do not hold a bond hearing within seven (7) days, Petitioner must be released from detention while he awaits that hearing.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Petitioner Nogueira-Mendes's Petition for Writ of Habeas Corpus. An appropriate Order follows.